**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KARIAH BUCKMIRE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BILLY JOE DOLLISON, and ENERGY TRANSPORT SOLUTIONS, INC.,**<br><br>**Defendants.** | **Case No. 24-CV-002215-SPM** |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is Professional Medical Billing Associates, LLC's ("PMBA") Non-Party Witness' Objections to Deposition Notice and Motion to Quash. (Doc. 79). Defendants Billy Joe Dollison and Energy Transport Solutions, Inc. filed a Response, (Doc. 83), and the Court held oral arguments. Also pending before the Court is Defendants Billy Joe Dollison and Energy Transport Solutions, Inc.'s Motion to Strike and Exclude the Opinions and Testimony of Matthew Gornet, M.D. (Doc. 109). Having been fully informed of the issues presented, and for the reasons stated below, PMBA's Motion to Quash, (Doc. 79), is **GRANTED** and Defendants' Motion to Strike and Exclude, (Doc. 109), is **DENIED**.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

At the heart of this matter is Plaintiff's physician, Dr. Matthew Gornet. Dr. Gornet is a spinal surgeon who treated Plaintiff Kariah Buckmire after she was

involved in a multi-car collision and injured her lower back and spine. (Doc. 1-1, pp. 1–3; Doc. 83-3, pp. 2–5; Doc. 83-4, pp. 8–9).

On February 4, 2025, without Plaintiff's knowledge, Plaintiff's attorney sent Dr. Gornet a two-sentence letter requesting "a cost estimate for any anticipated future medical treatment, which Kariah Buckmire may require" that could be used for "settlement purposes." (Doc. 83-1; Doc. 83-4, p. 76). Dr. Gornet responded on March 27, 2025, opining that Plaintiff "is at significant increased risk for further problems in her cervical spine," and that she may require a four level "cervical disc replacement" in the future. (Doc. 83-2, p. 1). Dr. Gornet estimated that this surgery would cost around $270,000. (*Id.*). Plaintiff never knew the letter existed until her deposition. (Doc. 83-4, p. 76).

Although none of Dr. Gornet's medical records on Plaintiff ever addressed future surgery, Dr. Gornet testified that the letter was based on his collective knowledge, experience, and Plaintiff's MRI scans (Doc. 83-3, pp. 4, 6–10). Additionally, Plaintiff testified that while surgery was not the immediate plan, if the next "round of the injections" was unsuccessful her treatment "was going to progress to surgery." (Doc. 83-4, p. 76).

On February 13, 2026, Defendants served PMBA with a deposition notice and subpoena seeking documents relating to roughly seven years of financial information for Dr. Gornet, documents regarding medical legal or expert services provided by PMBA, and other various records. (Doc. 80). PMBA is a medical billing company that

assists multiple St. Louis medical providers with billing matters, including Dr. Gornet. (*Id.*).

PMBA argues that the subpoenaed information is cumulative, redundant, overbroad, unduly burdensome, vague, ambiguous, and vastly disproportional to the needs of the case. (*Id.*, pp. 2, 6–9). PMBA further argues that because Dr. Gornet is Plaintiff's treating physician, many of the documents requested are not relevant and do not need to be provided. (*Id.*, pp. 3–4) Defendants respond that the information requested must be provided as Dr. Gornet is an expert witness pursuant to Rule 26(a)(2)(B). (Doc. 83).

After failing to resolve this discovery dispute, PMBA filed its Objection to Deposition Notice and Motion to Quash on March 4, 2026. (Docs. 79, 80). Defendants filed an Opposition on March 11, 2026. (Doc. 81). The Court held a hearing on August 13, 2026, and took the matter under advisement. (Doc. 121).

Defendants have also filed a Motion to Strike and Exclude the Opinions and Testimony of Matthew Gornet, M.D. (Doc. 109). Defendants argue that because Plaintiff did not disclose Dr. Gornet as a retained expert, and because Dr. Gornet did not provide an expert report as required by Rule 26(a)(2)(B), his testimony regarding causation, surgical recommendations, and the associated costs must be excluded. (*Id.*, p. 3). Plaintiff responded arguing that because Dr. Gornet's opinions were formed during treatment, he is not an "expert witness," but rather Plaintiff's "treating physician." (Doc. 125).

## LEGAL STANDARD

An expert witness is one qualified by their "knowledge, skill, experience, training, or education," and whose testimony is based on their "scientific, technical, or other specialized knowledge." FED. R. EVID. 702. Disclosure of experts is covered by Rule 26 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 26. When a party identifies an expert witness, the party must comply with the disclosure requirements in Rule 26(a)(2). If a party's expert witness "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" then the party and witness must provide a written report. FED. R. CIV. P. 26(a)(2)(B). Failure to comply with Rule 26's reporting requirements results in "automatic and mandatory" sanctions, "unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.". *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). The sanctioned party is not allowed to introduce the expert witness's testimony as "evidence on a motion, at a hearing, or at a trial." FED. R. CIV. P. 37(c)(1); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008).

In *Myers v. National Rail Road Passenger Corp.*, the Seventh Circuit held that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)." 619 F.3d 729, 734–35 (7th Cir. 2010) (quoting FED. R.

CIV. P. 26(a)(2)(B)). In other words, when a treating physician makes a determination in the course of treatment, they are not required to submit an expert report under Rule 26(a)(2)(B).

In 2010, a few months after *Myers* was decided, Rule 26 was amended to add subsection (C) and clarify whether a treating physician was required to provide a written report. The Advisory Committee wrote:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony. . . . [E]xamples include physicians or other healthcare professionals and employees of a party who do not regularly provide expert testimony.

FED. R. CIV. P. 26 advisory committee's notes to 2010 amendment. While this amendment clarified the role of a treating physician, it did not change the analysis from *Myers*.

## ANALYSIS

PMBA, Plaintiff, and Defendants all agree that Dr. Gornet, as a treating physician, is a witness who has expert knowledge. Additionally, there is no dispute that Dr. Gornet was not disclosed as an expert witness. However, the question before the Court is whether paying for Dr. Gornet's letter, which offers an opinion regarding future medical expenses, transforms him from a treating physician into an expert "retained or specially employed to provide expert testimony." FED. R. CIV. P. 26(a)(2)(B).

### I. Dr. Gornet is a treating physician

Dr. Gornet was and is Plaintiff's treating physician. Plaintiff was referred to Dr. Gornet by her chiropractor and has seen Dr. Gornet on multiple occasions. (Doc.

83-4, pp. 42–43). Defendants' argument is that by paying Dr. Gornet for his letter opining on future medical expenses, Dr. Gornet is no longer acting as a "treating physician" but rather as a "retained expert," and that the opinions expressed in the March 27, 2025, letter were not made during the course of treatment. (Docs. 83, 109). The Court disagrees.

Although Dr. Gornet was paid for his professional opinion on future medical expenses, he is not some disinterested or outside expert looking in and analyzing Plaintiff's treatment after-the-fact. Dr. Gornet had direct first-hand knowledge of Plaintiff's medical issues as her treating physician, and his opinions were made in the course and scope of Plaintiff's treatment. (Doc. 83-3, pp. 4, 6–10). The simple fact that Dr. Gornet was paid for his letter to Plaintiff's counsel does not turn him into a "retained expert." As such, Dr. Gornet is not subject to the more rigorous reporting requirements of Rule 26(a)(2)(B).

**II. Scope and Substance of Dr. Gornet's Testimony**

Although testimony concerning future medical treatment and expenses is usually the domain of an expert witness, that is not always the case. When the treating physician makes a determination in the course of providing treatment, they can testify without being considered a "retained expert." *See Myers*, 619 F.3d at 734–35; *E.E.O.C v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013); *Blanton v. RoundPoint Mort. Servicing Corp.*, 825 Fed.Apx. 369, 373–74 (7th Cir. 2020).

During the course of treatment, Dr. Gornet and Plaintiff discussed the potential need for surgery should conservative measures prove ineffective. His

opinions concerning her anticipated medical needs arise directly from his treatment of her and from his extensive experience treating similarly situated patients. He possesses specialized expertise in his field and has performed numerous surgeries comparable to the procedure referenced in his correspondence to her counsel. As the owner of his medical practice, he also maintains substantial familiarity with the costs reasonably associated with future treatment. This knowledge, combined with his direct care of Plaintiff, permits him to offer opinions regarding her potential future medical expenses in his capacity as her treating physician. His breadth of experience does not preclude him from testifying to information obtained throughout the course of her treatment, including his assessment of her likely future medical needs.[1]

## Conclusion

For the reasons set forth above, the Court **GRANTS** Professional Medical Billing Associates, LLC's Non-Party Witness' Objections to Deposition Notice and Motion to Quash, (Doc. 79), **QUASHES** Defendant's subpoena and deposition notice to Professional Medical Billing Associates, LLC, and **DENIES** Defendants Billy Joe Dollison and Energy Transport Solutions, Inc.'s Motion to Strike and Exclude the Opinions and Testimony of Matthew Gornet, M.D. (Doc. 109).

**IT IS SO ORDERED.**

**DATED: October 2, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**

[1] Defendants will have the opportunity to thoroughly cross-examine Dr. Gornet at trial.